**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**PAULA MARIE DICKERSON**                                          **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO. 5:22-cv-23-DCB-LGI**

**KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL SECURITY**                    **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Paula Dickerson appeals the final decision denying her applications for disability benefits.  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully analyzed the entire record, including the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

Plaintiff filed disability applications alleging she became disabled because of back pain on March 15, 2020.  She was 44 years old at the time, with a high school education and past relevant work experience at the heavy and medium exertional levels as a school janitor, warehouse worker, and stock clerk.  Following agency denials of her applications, an ALJ issued a decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review, and she now appeals that decision.

The evidence, detailed in the memorandum briefs and the ALJ's decision, will not be repeated in depth here.  Plaintiff testified that she cannot work because of back pain. She injured her back while working at Walmart and had surgery in December 2014.

Though she subsequently healed, she still suffers from lower back pain, and cannot bend,

twist, lift more than 5-10 pounds, or do the things that she used to do.  She was diagnosed

with arthritis about one month before the administrative hearing and testified that it has

taken over her body so much so that she can hardly get out of the bed in the morning; it

also prevents her from sitting or standing too long.  Muscle relaxers and Aleve help ease

the pain.  She testified that she has also had migraines since she was 16 years old and gets

three to four migraine headaches a week.  Though medication helps, her headaches come

back.  She also began taking medication for anxiety and depression in the months before

the administrative hearing, and though it helps at times, she still feels like sitting and

crying.

      After considering Plaintiff's testimony and subjective complaints, the ALJ

concluded that the objective medical evidence did not establish Plaintiff was precluded

from all work activity.  At step one of the five-step sequential evaluation,[1] the ALJ

observed that Plaintiff had quarterly earnings for the 4th quarter of 2020 and the 1st

quarter of 2021.  Because a determination addressing the entire period at issue could be

reached at a later step without further development or resolution of this issue, however,

the ALJ stated that she made no finding on whether Plaintiff had engaged in substantial

---

[1]  Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

gainful activity after her alleged onset date.[2]  At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease, osteoarthritis, and neuropathy were severe, they did not meet or medically equal any listing.  Other impairments not listed on her disability application — migraines, fibromyalgia, and anxiety/depression — were found to be not severe or not medically determinable.  At steps four and five, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except she should never climb ladders, ropes, or scaffolds and should only sometimes balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. Based on vocational expert testimony, the ALJ concluded that, given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as an office helper, order caller, and sales attendant.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards.  *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient

---

[2]  A claimant who has engaged in any substantial gainful activity during the 12-month duration period from the onset of her conditions is precluded from receiving disability benefits.  If the claimant is so engaged, the inquiry ends at step one of the sequential evaluation, and the claimant is found not disabled, regardless of their medical condition, age, or work experience.  20 C.F.R. § 404.1520(b).

> evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).  On judicial review, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

### Discussion

Plaintiff makes five arguments on appeal that can be categorized into two primary assignments of error: (1) The ALJ erred in finding that certain impairments were not severe or medically determinable at step two; and, (2) The ALJ erred in failing to properly evaluate the medical opinions of record.  The Commissioner counters that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards.  Given the record in this case, the Court finds no basis for reversal or remand.

### Non-severe Impairments

At step two of the sequential evaluation, the claimant bears the burden of proving not only that she has been diagnosed with a medically determinable impairment, but that it affects her ability to do basic work activities.  *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (per curiam) (unpublished).  As her first point of error, Plaintiff contends

that she met this burden, and the ALJ failed to properly evaluate her migraines, mental impairments, and fibromyalgia, all of which were found to be non-severe at step two.

*1. Migraine/Headaches*

First, the undersigned notes that Plaintiff did not list migraines as a disabling impairment on her disability application nor mention them until towards the end of the administrative hearing, having previously identified back and joint related pain as the only impairments impairing her ability to work. Her counsel, moreover, did not pose a hypothetical including headache limitations to the vocational expert at the administrative hearing, nor does it appear any such limitations were assigned by any physician of record.

In assessing the evidence at step two, the ALJ classified Plaintiff's migraine headaches as a medically determinable impairment, but she concluded that they were not a severe impairment, explaining as follows:

> The claimant also has a history of migraine headaches; however, she testified that she has had migraines since she was sixteen years old and she has previously worked full time. The claimant testified that she had migraines three to four times a week; however, the evidence does not support this frequency. At a January 2021 visit to Bridging Community with Healthcare, the claimant complained of migraines with photophobia, phonophobia, nausea, and vomiting. At the visit, the claimant was prescribed Sumatriptan. At a May 2021 follow-up, the claimant reported that Sumatriptan did not help her migraines and she was prescribed Rizatriptan. At a June 2021 follow-up, the claimant reported that she had not had to take Rizatriptan because she had not had a migraine since her last visit. At her August 2021 polyneuropathy consult, she reported having headaches twice a week, but at her August 2021 rheumatology consult, she reported that she may have three migraines a week. These records do not note when the claimant's last migraine was and there is no evidence of any serious problems related to her migraines. Accordingly, the undersigned concludes that the claimant's migraine headaches did not cause any more than minimal limitation on the claimant's ability to perform basic work activities.

The ALJ's notation that there was no evidence of any "serious problems related to her migraines" is a bit concerning. The step-two severity threshold requires only a *de minimis* showing. It is presumed on judicial review, however, that an ALJ applied the correct severity standard where, as here, she cites both *Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir. 1985) and Social Security Ruling ("SSR") 85-28. *Titles II and XVI: Medical Impairments That Are Not Severe*, SSR 85-28, at *3. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Moreover, the Fifth Circuit has long cautioned that the law does not require the incantation of magical words as a prerequisite to a valid severity determination. *Lynch v. Shalala*, 19 F.3d 14 (5th Cir. 1994) ("magic words" are not required for compliance with *Stone*, 752 F.2d at 1101. "If 'substantial evidence supports the finding of . . . non-severity,' then the error was harmless." *Barnes v. Colvin*, No. 3:15CV879-DPJ-JCG, 2017 WL 710966, at *2 (S.D. Miss. Feb. 22, 2017) (quoting *Id*); *see also Charles v. Colvin*, 628 F. App'x 290, 292 (5th Cir. 2016) (observing that even if the ALJ had failed to invoke the "slight abnormality" criterion, any error would have been harmless as substantial evidence supports the finding that Charles's impairments were not severe under the *Stone* standard) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). On this record, as set forth here, the Court cannot conclude that the ALJ's erred in finding Plaintiff's migraines were nonsevere at step two. Nor was the ALJ required to incorporate additional limitations into plaintiff's residual functional capacity assessment to account for her non-severe impairments.

Plaintiff's primary objection to the ALJ's non-severity finding is that she failed to consider SSR 19-4p when evaluating her migraine symptoms—in particular, that the ALJ did not address the effect of photophobia on her ability to sustain attention and concentration.  Soc. Sec. Ruling, SSR 19-4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4p (S.S.A. Aug. 26, 2019), at *6. SSR 19-4p was promulgated in 2019 to help adjudicators evaluate whether headache disorders constitute a medically determinable impairment and to provide guidance in considering the effects of headaches when determining residual functional capacity.   SSR 19-4p, 2019 WL 4169635, at *2.  To Plaintiff's point, the ruling, which the ALJ does not refer to or cite, notes that symptoms "such as photophobia, may cause a person to have difficulty sustaining attention and concentration."  But notably, the ruling, which largely focuses on the identification of migraine headaches as a medically determinable impairment, also provides that the existence of a primary headache disorder as a medically determinable impairment will not be established "based only on a diagnosis or statement of symptoms."  It explains that the ALJ will consider the following combination of findings in determining whether the claimant has a primary headache disorder:  a primary headache disorder diagnosis from an acceptable medical source; an observation of a typical headache event, and a detailed description of the event including all associated phenomena,[3] by an acceptable medical source; remarkable or unremarkable findings or laboratory tests; and response to treatment.

---

[3] Associated phenomena includes, for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms; the frequency of headache events; adherence to prescribed treatment; side

Consistent with the ruling, the ALJ considered Plaintiff's response to medication. But significantly here, the record lacks an observation of a typical headache event by an acceptable medical source detailing the event and all associated phenomena.  SSR 19-4p, 2019 WL 4169635, at *7.[4]  Although Plaintiff contends that nothing in the evidence refutes her claim that she has severe and debilitating migraines multiples days per month which render her off task and unable to concentrate, the medical records reflect only Plaintiff's subjective description of her headache history and symptoms.  *See Smith v. Comm'r of Soc. Sec.*, No. 221CV10093SJMJJCG, 2022 WL 1052427, at *5 (E.D. Mich. Mar. 4, 2022), *report and recommendation adopted,* No. 2:21-CV-10093, 2022 WL 965022 (E.D. Mich. Mar. 30, 2022) (unpublished) (crediting the Commissioner's argument that the plaintiff's "self-reported descriptions of her headaches [we]re not medically equivalent to a medical professional's observations," because "[t]he SSA considers 'a detailed description from an [acceptable medical source]'" (quoting SSR 19-4p, 2019 WL 4169635, at *7).

These facts are also distinguishable from those where courts have remanded for failing to address SSR 19-4p.  *See*, *Dainton v. Comm'r of Soc. Sec.*, No. 9:21-CV-00117-MAC, 2023 WL 2657639, at *6 (E.D. Tex. Mar. 9, 2023), report and recommendation

---

effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and, limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations.

[4] Perhaps Plaintiff's medical records before the period at issue document such evidence, but the record does not.

adopted sub nom.., No. 9:21-CV-117, 2023 WL 2652234 (E.D. Tex. Mar. 24, 2023) (remanding where ALJ did not address SRR 19-4p despite objective medical evidence during the relevant period supporting Plaintiff's subjective allegations); *Johnson v. Comm'r of Soc. Sec.*, No. 3:21-05082-CV-RK, 2023 WL 181090, at *3 (W.D. Mo. Jan. 13, 2023) (remanding where ALJ did not address SSR 19-4p despite evidence that claimant suffered from consistent, weekly migraines for which she was prescribed various treatment plans). The record, which dates back to 2015, does not show that Plaintiff reported consistent migraines or ***even a history of migraines***. Despite reportedly suffering from migraine headaches since she was 16 years old, Plaintiff did not report a migraine history to any of her medical providers nor list it as a preexisting condition, before or after her onset date, until January 2021. As the ALJ observed, this first mention was in in a follow up visit for joint pain to her nurse practitioner, who noted that Plaintiff reported experiencing migraines with photophobia, phonophobia, nausea, and vomiting and prescribed Sumatriptan. At her May 2021 follow-up, she was prescribed a new medication because she reported that the previous medication did not help her migraines. At her June 2021 follow-up, she advised her nurse practitioner that she had yet to take the new medication because she had not had a migraine since her last visit. In each visit, the record reflects only Plaintiff's subjective descriptions of her headache history and symptoms.

Plaintiff asserts that the ALJ erroneously relied on her migraine history, however, and failed to consider that her migraines have become worse over time, citing both the above records and the records from her rheumatology and polyneuropathy consults in

August 2021.  At both consults, Plaintiff reported experiencing migraine headaches 2-3 times per week.  The neurological consult specifically notes her reports that her migraines "last for several hours," and that the "pain is intense and throbbing + N&V, photo/phono."  Upon examination, the neurologist primarily diagnosed Plaintiff with polyneuropathy and notes migraines "without aura and without status migrainosus, not intractable" and "never on a preventative med."  Neither provider, however, indicates that they actually "observ[ed] a typical headache event" or provides "a detailed description of the [observed] event," SSR 19-4p, 2019 WL 4169635, at *6.  Plaintiff's relevant clinical presentations throughout the record were consistently normal, without pain, distress, or symptoms attributable to migraines.  And despite Plaintiff's reported migraine frequency, or her contention that they worsened over time, none of her medical appointments were for treating migraines.  *See Timothy M. v. Comm'r of Soc. Sec.*, No. 2:20-CV-200-KJD, 2022 WL 17175262, at *5 (D. Vt. Nov. 23, 2022);  *also Clarke v. Comm'r of Soc. Sec.*, No. 19-CV-7213 (BCM), 2021 WL 2481909, at *20 (S.D.N.Y. June 16, 2021) (finding subjective complaints of daily migraines to be inconsistent with the record when "[plaintiff] was not in any 'acute distress' at any of the dozens of medical appointments and examinations documented in the administrative record" and there was not "any suggestion, in the record, that she had to cancel appointments due to migraines").  A claimant's failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used with the medical reports to discount complaints of disabling pain or other limitations.  *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

Given the evidence as stated, the undersigned submits that any error by the ALJ in failing to consider whether Plaintiff's migraines met the requirements of SSR-19-4p at step two was harmless.  Though Plaintiff contends that she was prejudiced by the ALJ's failure to consider the effect of photophobia on her ability to sustain attention and concentration in assessing her residual functional capacity, the ALJ was not required to incorporate additional limitations into plaintiff's residual functional capacity assessment to account for non-severe impairments.  Further, the lack of objective medical evidence establishing that Plaintiff experienced migraine symptoms—including photophobia— to the frequency and degree alleged supports the ALJ's subsequent finding that any appreciable limitations she experiences would not preclude her from sustaining work within two-hour intervals.  *See Clarke,* 2021 WL 2481909, at *19 (evidence about photophobia sensitivity was both sparse and uneven). *Angela E. v. Kijakazi*, 2023 WL 2745181, at *14 (S.D. Tex., 2023) ("Although the ALJ discussed medical records that document her migraines, and Plaintiff made subjective complaints of symptoms from migraine headaches, she does not show that the record contains objective medical evidence supporting any specific limitations for her migraine headaches. Thus, the ALJ did not err in omitting a specific limitation for the migraine headaches."); *Cooper v. Kijakazi*, No. 4:22-CV-118, 2023 WL 2467880, at *2 (N.D. Miss. Mar. 10, 2023) (finding the ALJ's decision omitting a specific limitation for the plaintiff's migraine headaches was supported by substantial evidence when there was no objective medical evidence to support a specific limitation).

SSR 19-4p provides that "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC" when evaluating a primary headache disorder like migraines.  2019 WL 4169635, at *8.  The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual functional capacity determination that are not supported by the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  Though Plaintiff maintains the ALJ should have included specific sustainability limitations in the residual functional capacity assessment despite finding her migraine were non-severe, the ALJ explained as follows:

> [T]he undersigned has considered all of the claimant's alleged symptoms and limitations, including pain and side effects of medications. The evidence, however, does not support a finding that the claimant's alleged pain and any other factors (even in combination, to the extent supported) would impose any appreciable limitation in her abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; or deal with changes in a routine work setting. ***The undersigned specifically finds the claimant is capable of sustaining work, within the determined residual functional capacity, for two-hours blocks to complete an eight-hour workday, five days per week (or an equivalent work schedule), without the need for additional work breaks, excessive absences or other accommodations.*** [5]

Neither Plaintiff nor the Commissioner directly address the fact that the ALJ made this finding, nor the fact that it is consistent with her finding that Plaintiff had mild limitations in concentrating, persistence and pace.[6]  *Raiford v. Kijakazi*, No. CV 22-764, 2023 WL

---

[5] Emphasis added.

[6] Under the regulations, "concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit timely and appropriate completion of tasks commonly found in the work setting." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(3).

1486227, at *16 (E.D. La. Jan. 10, 2023), *report and recommendation adopted,* No. CV 22-764, 2023 WL 1475061 (E.D. La. Feb. 2, 2023) (limitation to maintaining attention and concentration for no longer than 2-hour blocks of time account for any difficulty Plaintiff might have due to her migraines).  No examining or treating source assigned limitations beyond the two-block intervals.  And Plaintiff testified that medications help her migraines, which are described in the medical record as "without aura and without status migrainosus, not intractable," meaning they responded to treatment.

For all the reasons stated, the undersigned submits that no reversal or remand is warranted on this issue.  Substantial evidence supports the ALJ's conclusion that migraines would not preclude Plaintiff from working within the limits of the assessed residual functional capacity.

2.    *Mental Health Impairments*

The same holds true for Plaintiff's assertion that the ALJ reversibly erred in failing to include specific limitations for her anxiety and depression in her residual functional capacity determination.

At step two of the sequential evaluation, the ALJ considered the medical and testimonial evidence relevant to Plaintiff's depression and anxiety before recognizing them as mildly limiting, but not severe.  In doing so, the ALJ appropriately analyzed the B-criteria and found Plaintiff had mild limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt and manage herself.  Without challenging any of these findings, Plaintiff maintains that it was error for the ALJ not to include specific mental limitations in her residual functional capacity determination.

But as noted, the ALJ explains in her residual functional capacity analysis that Plaintiff's limitations did not "impose any appreciable limitation in her abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; or deal with changes in a routine work setting."  Plaintiff's nonexertional limitations would not preclude her from working "for two-hours blocks to complete an eight-hour workday, five days per week (or an equivalent work schedule), without the need for additional work breaks, excessive absences or other accommodations."  *See Jeansonne*, 855 F. App'x at 198 ("the evidence supports a finding that [claimant's] mild mental limitations do not significantly affect her ability to work. Therefore, we determine that the ALJ did not err in declining to consider [claimant's] mental impairments at step five.").  *Silvio v. Saul*, No. CV 20-381-BAJ-RLB, 2021 WL 4498991, at *6 (M.D. La. Aug. 18, 2021), *report and recommendation adopted,* No. CV 20-00381-BAJ-RLB, 2021 WL 4497485 (M.D. La. Sept. 30, 2021) ("because substantial evidence supports the finding that Plaintiff's mild mental limitations do not significantly limit his ability to work and do not prevent the claimant from performing any other substantial gainful activity, the ALJ need not include Plaintiff's non-severe impairments in the RFC"); *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *6 (N.D. Tex. Jan. 11, 2016) (finding that ALJ sufficiently considered non-severe, mental impairments in calculating the RFC, and therefore did not err by not including any mental limitations in the RFC).

Moreover, as the Commissioner points out, Plaintiff has not identified evidence showing the need for additional mental limitations.  Exam findings repeatedly noted that

Plaintiff had a euthymic mood, normal affect, with no impairment of her thought

processes or thought content; intact recent and remote memory; and good attention span

and concentration.  Plaintiff also reported that the current dosage of her anxiety mediation

was controlling her anxiety well.  Though she indicated that her ability to complete tasks

is impacted on her function report, she did not report that her ability to concentrate,

understand, following instructions, or get along with others, were impacted.  There are

also no mental status examination of record assigning additional limitations.  Plaintiff

does not refute any of this evidence or re-urge this argument in rebuttal.

     3.    *Fibromyalgia*

Plaintiff contends that the ALJ reversibly erred in finding that her fibromyalgia

was not a medically determinable impairment at step two because it contradicts the

diagnosis of Neal I. Shparago, D.O..

Though Dr. Shparago diagnosed Plaintiff with fibromyalgia syndrome at his

rheumatology consult in August 2021, he also diagnosed her with polyarthralgia and

noted that her exam seemed most consistent with generalized osteoarthritis, both of

which the ALJ found to be severe medically determinable impairments at step two.  A

medically determinable impairment must result from an anatomical, physiological or

psychological abnormality, which is shown to exist by medically acceptable clinical and

laboratory diagnostic techniques 20 C.F.R. § 404.1521, 416.921.  As Plaintiff

acknowledges, the ALJ considered the relevant social security ruling, SSR 12-2p, in

evaluating her fibromyalgia, explaining as follows:

Social Security Ruling 12-2p provides guidance in evaluating disability claims of individuals with fibromyalgia. Fibromyalgia may be established as a medically determinable impairment if an acceptable medical source provides evidence consistent with the 1990 American College of Rheumatology (ACR) Criteria for the Classification of fibromyalgia, or the 2010 ACR Preliminary Diagnostic Criteria. Under the 1990 American College of Rheumatology (ACR) Criteria, fibromyalgia may be found to be a medically determinable impairment if there is evidence that the claimant has a history of widespread pain (pain in all quadrants of the body), at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded. Under the 2010 ACR Preliminary Diagnostic Criteria, Fibromyalgia may found to be a medically determinable impairment if there is evidence that the claimant has a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms (such as muscle pain, irritable bowel syndrome, fatigue, tiredness, cognitive or memory problems, headache, abdominal cramps, dizziness, insomnia, depression, anxiety, and etc.), and evidence that other disorders that could cause repeated manifestations of symptoms, signs, or co-occurring conditions are excluded.

In the instant case, Neal Shparago, D.O., diagnosed the claimant with fibromyalgia syndrome with chronic widespread pain, fatigue, sleep disturbance, depression, anxiety, chronic constipation, and migraine headache. While examination findings did note multiple tender points, there is no evidence that the claimant has pain in all quadrants of the body and/or at least eleven positive tender points (B9F/10). Additionally, the medical evidence does not show evidence that other disorders that could cause the symptoms or signs were excluded. Therefore, neither the 1990 American College of Rheumatology Criteria nor the 2010 ACR Preliminary Diagnostic Criteria were met and fibromyalgia is not established as a medically determinable impairment.

Plaintiff objects to the ALJ's conclusion, but she does not direct the Court to any evidence to the contrary nor does she re-urge this argument in rebuttal.

That said, the undersigned submits that any error was harmless. *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) (applying the harmless error doctrine to a social security case); *see also Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (observing that "procedural improprieties will ... constitute a basis

for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision"). In the end, the ALJ concluded that "[e]ven if if fibromyalgia had been found to be a "severe medically determinable impairment," this would not have resulted in the undersigned finding a more restrictive residual functional capacity." As further set forth, substantial evidence supports this finding.

### Medical Opinion Evidence

As her second primary point of error, Plaintiff alleges the ALJ failed to properly evaluate the medical opinions of the consulting examiner and the agency physicians.

Social security regulations were revised in recent years so that supportability and consistency of medical opinions are the most important factors in assessing opinion evidence, and ALJs may, but are no longer required to, explain how they considered other factors. 20 C.F.R. § 404.1520c(b). The regulation sets forth certain "articulation requirements" specifically requiring the ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in [the claimant's] determination or decision." § 404.1520c(b)(2). But it "is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (citation omitted). An ALJ need not adopt a specific physician's assessment. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023). An ALJ remains free to assign little or no weight to the opinion of any physician when it is

unsupported by the evidence.  *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

### 1.  Consulting Examiner

Plaintiff underwent a consultative examination in June 2020 with Justin Dyer, M.D.  She arrived with a cane to the examination, and her gait was noted to be asymmetric, unsteady and limping, though she could walk around the exam room without it.  She also had trouble carrying her handbag and getting up and down from the exam table, but she could rise from the sitting position.  Upon examination, she exhibited, among other things, a reduced range of motion in her thoracolumbar spine range and bilateral hips.  Dr. Dyer's "probable diagnoses" were degenerative disc disease, back pain, osteoarthritis, and radiculopathy, and he concluded that she had severe walking limitations that would require her to use a cane for long distances and uneven terrain.  He also opined that she had moderate limitations in lifting, carrying weight, sitting and standing, but could frequently bend, stoop, crouch, and squat.

The ALJ did not find this opinion persuasive, however, because it was "vague as to the extent of the claimant's limitations on sitting, standing, walking, lifting carrying," and because the use of a cane was "not supported by or consistent with" Plaintiff's examinations of record showing normal balance, gait, and stance.  The ALJ also found that Plaintiff's osteoarthritis and neuropathy diagnoses supported limiting her to occasional postural limitations rather than the frequent limitations that Dr. Dyer assigned.

Plaintiff contends that the ALJ's assessment fails to sufficiently explain the supportability and consistency factors, however.  She argues that "common sense

dictates" that, while Dr. Dyer did not explicitly mention "the exact amount of time that [she] should be capable of standing/walking/sitting," it does not necessarily follow that she could perform the full range of light work.  Rather, "at a minimum," she would have "some restrictions with her ability to stand and/or sit."  But as noted below, the ALJ found the agency physicians' opinions that Plaintiff could perform light work more persuasive because it is supported by and consistent with the record as a whole.  Moreover, Plaintiff "misunderstands her burden here." *Miller*, 2023 WL 234773, at *3.  She fails to show that if the ALJ had given further explanation to Dr. Dyer's limitations, that she would have adopted the limitation.  *Id.*

   *2. Agency Physicians*

   Lastly, Plaintiff contends the ALJ also erred in finding persuasive the agency physicians' opinions that she could perform light work.  In advancing this argument, Plaintiff notes that under the regulations, the ALJ is specifically required to consider whether new evidence received "after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."  20 C.F.R. § 404.1520c(c)(5).  Plaintiff asserts, however, that agency physicians "never had the opportunity to review 270 pages of medical evidence added to the record" after their opinions issued in August and September 2020.  Such evidence, according to Plaintiff, included "key medical evidence such as the records from Baptist Hospital that detail [she] had difficulty walking and a multitude of other diagnoses."  The record does not support these claims.

Though the administrative record index reveals 260 pages of medical evidence were "added" to the record after the agency physicians issued their opinions, little of it is "new." It is largely duplicative and pre-dates the onset date. Of the new evidence, the only records referencing walking difficulty that Plaintiff cites, and the undersigned could find, are listed in the medical history she gave at her neurology and rheumatology consults. Upon examination, however, along with every other examination generated after the agency physicians (and Dr. Dyer) issued their opinions, Plaintiff exhibited normal gait, stance, and balance, with no cane use. As to the diagnoses made after the agency physicians issued their opinions, the ALJ explained that while their assessments limiting Plaintiff to light work was persuasive, "the claimant's osteoarthritis and neuropathy support the additional postural limitations as set forth in the residual functional capacity." This finding is consistent with § 404.1520c(c)(5) and is supporting by substantial evidence.

### Conclusion

In sum, based on consideration of the evidentiary record, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a recommendation that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file

written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED on July 31, 2023.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE